

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: October 26, 2012.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**
_____

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 11-12367-CAG |
| | § | |
| JUSTIN ALLEN PLATT, | § | |
| Debtor. | § | CHAPTER 7 |

| | | |
|---|---|---|
| WILL RHODES, | § | |
| Plaintiff, | § | |
| | § | ADV. NO. 11-01266-CAG |
| v. | § | |
| | § | |
| JUSTIN ALLEN PLATT, | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S COMPLAINT
AND 11 U.S.C § 523(a)(6) EXCEPTION TO DISCHARGE**

This adversary proceeding arises from a state court suit filed by Will Rhodes ("Plaintiff") seeking damages from Justin Allen Platt ("Defendant") for alleged willful and malicious personal injury to Plaintiff. During the preliminary stages of the state proceedings, Platt filed a Chapter 7 bankruptcy case. Plaintiff filed this adversary proceeding (ECF No. 1) to assert the nondischargeability of debts arising from the state law claim due to "willful and malicious injury. . . ." 11 U.S.C. § 523(a)(6) (West 2012).

After filing the complaint, Rhodes filed a motion to lift the automatic stay to allow the state court to determine liability on the personal injury claim. (ECF No. 31). This Court denied the motion and held a trial to determine whether Platt's conduct was "willful and malicious" and therefore nondischargeable under Section 523(a)(6).[1]

Based on the evidence, testimony at trial, and Plaintiff's post-hearing brief (ECF no. 40), the Court holds that Defendant willfully and maliciously injured Plaintiff, and therefore any debt arising from that injury is nondischargeable under 11 U.S.C. § 523(a)(6).

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) on which this Court can enter a final judgment. This matter is referred to the Court under the District's Standing Order of Reference. Venue is proper under 28 U.S.C. §§ 1408(1) and 1409. The following represents the Court's findings of fact and conclusions of law made pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.

## PARTIES' CONTENTIONS

This dispute stems from an incident that occurred between Rhodes and Platt at Club DeVille, a nightclub and bar located at 900 Red River Street in Austin, Texas. Plaintiff was an employee of the club and working as a sound engineer for a musical act playing that evening on April 2, 2011. Sometime around midnight that evening, Defendant and friends arrived at Club DeVille. After the musical performance ended, Defendant picked up and began playing a tambourine that belonged to the musical act. Plaintiff testified that he asked Defendant to return the tambourine over the PA system, while Defendant alleges that he was heckled by Plaintiff over the microphone. The parties encountered one another and Plaintiff suggested that Defendant engage in a "drinking stunt." The stunt required that a third party pour beer down the

---

[1] The Court does not make any findings on the amount of damages owed by Platt, if any. This issue will be determined by the state court.

2

participant's back into a shoe and that the participant then drink the beer out of the shoe. After initial protest, Defendant agreed and performed the stunt. Sometime later, the two encountered each other in the restroom.

Plaintiff and Defendant offer different accounts of the events that occurred in the Club DeVille restroom. Plaintiff testified that he was in the restroom washing up when he felt someone push him in the back, so he turned around and saw that it was Defendant. Plaintiff alleges that Defendant then took a pint beer glass and hit Plaintiff in the face, shattering the glass and causing lacerations to the left side of Plaintiff's face. Still holding the remnants of the glass, Plaintiff testified that Defendant struck him again, causing further injuries.

Defendant does not deny causing the injuries to Plaintiff. Rather, Defendant alleges that, in the same good-natured spirit as the drinking stunt performed earlier, he entered the restroom intending to pour a glass of beer on Plaintiff's head. As Defendant stepped forward to pour the beer over Plaintiff's head, the club's doorman, Aaron Miller, entered the restroom and startled Defendant. Defendant testified that he then tossed the glass in fright, accidentally hitting Plaintiff and causing the injuries to his face.

### FINDINGS OF FACT

Based on the evidence, testimony at trial and Plaintiff's post-hearing brief (ECF No. 40), the Court finds that Defendant struck Plaintiff with the specific intent to cause injury.

The parties were alone in the restroom when the incident occurred, so the issue of what caused the injuries boils down to a swearing match between Plaintiff and Defendant. Plaintiff provided photos of his injuries taken on the night of the incident. (Plaintiff's Exhibit No. 1). The pictures depict extensive lacerations across the left side of Plaintiff's face. Plaintiff also testified that he received approximately thirty-seven stitches as a result of the injuries sustained. Given

3

the extent and nature of Plaintiff's injuries, the only plausible conclusion is that Defendant intentionally struck Plaintiff with the intent to cause injury.

Defendant claims that he threw the glass upon being startled by the club's doorman, Aaron Miller, entering the restroom. To the contrary, Miller stated that when he entered the restroom Plaintiff was already bleeding from the face and crouched on the floor amidst broken glass. Even if the Court were to ignore Miller's testimony and accept Defendant's version of the facts, the pint glass would need to have been propelled with such force that it shattered when it made contact with Plaintiff's face. That a glass unintentionally thrown in fright could strike Plaintiff's face with enough force to shatter and cause such extensive injuries is highly implausible.[2] The Court therefore finds that Defendant's testimony regarding how the glass struck Plaintiff is not credible.

Defendant further argues that he entered the bathroom to pour a beer over Plaintiff's head. To support this argument, Defendant testified that someone at the bar suggested that Plaintiff would think it was funny if Defendant were to pour a beer over his head. Accordingly, Defendant contends that he entered the restroom not with malicious intent, but simply to continue the good-natured fun that started with the drinking stunt earlier that night. Even if someone urged Defendant to pour a beer on Plaintiff, Defendant's testimony that he entered the restroom without malevolent intent is not credible. It is hard to fathom how Defendant could believe that anyone would react positively to being doused in beer, let alone a complete stranger working at a local nightclub. In this case, the parties knew each other only to the extent that Plaintiff allegedly heckled Defendant over the PA system and then persuaded Defendant to drink

---

[2] In this case, there is some dispute as to how Plaintiff was struck with the glass. While Plaintiff alleges that Defendant struck him twice with the glass in his hand, Defendant claims he threw the glass and that Plaintiff was struck after the glass left Defendant's hands. It is not necessary for the Court to decide whether Defendant threw that glass at Plaintiff or struck Plaintiff while the glass was in his hand. Under either scenario, the extent of Plaintiff's injuries demonstrate that Defendant acted with the intent to injure.

4

beer from a shoe. This prior conduct, in conjunction with the humorless act of dousing someone in beer, leads the court to conclude that Defendant did not enter the restroom of Club DeVille simply to play a lighthearted prank on Plaintiff.

Defendant's conduct following the incident also suggests that he acted with intent to injure. Defendant fled the bar immediately after the incident, breaking part of the club's front door as he left. Although the bar staff were initially able to indentify Defendant by finding his Facebook account, Defendant made his Facebook account private soon after the incident occurred.[3] During the same time period, Plaintiff removed the last names—including his own—from a webpage promoting his band. Furthermore, under cross-examination, Plaintiff admitted that he filed bankruptcy because of the state personal injury lawsuit filed against him. Taken together, these actions do not suggest the unintentional conduct that Defendant alleges.

Because of the nature and extent of Plaintiff's injuries, Defendant's implausible argument as to why he entered the bathroom, and Defendant's conduct after the incident, the Court concludes that Defendant entered the restroom of the Club DeVille and struck Plaintiff in the face with the specific intent to injure.

### CONCLUSIONS OF LAW

Although debts are generally discharged in bankruptcy, the Code provides that certain types of debt are not dischargeable for individual debtors. Section 523(a)(6) of the Bankruptcy Code states that debts "for willful and malicious injury" are not dischargeable in a Chapter 7 case. 11 U.S.C. § 523(a)(6). The Supreme Court interpreted Section 523(a)(6) in a case addressing willful and malicious injury in a medical malpractice context. ***Kawaahau v. Geiger***, 523 U.S. 57 (1998). The Court determined that the word "willful" modifies the word "injury," so a debtor must have intended the injury which resulted and not simply intended to commit the

---

[3] In this case, Defendant's account was "made private" such that an unknown third party searching for Defendant would no longer be able to find him on Facebook.

act which resulted in the injury. *Id.* at 61. Furthermore, the Court held that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id.* at 64.

After *Kawaahau*, the Fifth Circuit had an opportunity to further apply the willful and malicious standard in *In re Williams*. 337 F.3d 504 (5th Cir. 2003). Taking *Kawaahau* and earlier circuit precedent into account, the court found that the "test for willful and malicious injury . . . is condensed into a single inquiry of whether there exists 'either an objective substantial certainty of harm or a subjective motive to cause harm' on the part of the debtor." ***In re Williams****,* 337 F.3d at 509 (citing ***In re Miller***, 156 F.3d 598, 603 (5th Cir. 1998)). To establish an objective substantial certainty of harm (the "objective test"), the court must "analyze whether the defendant's actions, which from a reasonable person's standpoint were substantially certain to result in harm, are such that the court ought to infer that the debtor's subjective intent was to inflict a willful and malicious injury on the plaintiff." ***In re Powers***, 421 B.R. 326, 335 (Bankr. W.D. Tex. 2009). A subjective motive to cause harm (the "subjective test") is found when a "tortfeasor acts 'deliberately and intentionally, in knowing disregard of the rights of another.'" ***In re Gharbi***, No. 08-11023-CAG, 2011 WL 831706 (Bankr. W.D. Tex. Mar. 3, 2011) *aff'd*, A-11-CA-291 LY, 2011 WL 2181197 (W.D. Tex. June 3, 2011) (citing ***In re Miller***, 156 F.3d at 605-06 (adopting the definition of "implied malice" from ***In re Nance***, 566 F.2d 602, 611 (1st Cir. 1977))).

The standard of proof in a 523(a) dischargeability action is a preponderance of the evidence. ***Grogan v. Garner***, 498 U.S. 279, 291 (1991). To establish nondischargeability, Plaintiff must therefore show by a preponderance of the evidence that Defendant willfully and maliciously caused Plaintiff's injuries. Although the Court made findings of fact that Defendant acted with the specific intent to injure Plaintiff, the evidence independently demonstrates that

Defendant acted with both a subjective motive to cause harm and an objective substantial certainty of harm.

First, Plaintiff's injuries and the circumstances surrounding the incident foreclose the possibility that Defendant acted without the subjective intent to cause harm. This is the case whether Defendant struck Plaintiff with the glass in his hand or if Defendant threw it at him. If Defendant struck Plaintiff with the glass in his hand, there is no doubt that such an act was performed deliberately and intentionally to cause harm. Further, even if the court accepts that Defendant threw the glass at Plaintiff, the extensive injuries suggest a forceful, overhand throw directed at Plaintiff's head that would be sufficient to shatter the glass on impact. Such an act is not the reaction of a startled bar patron caught in the midst of a good-natured prank; it is the act of one who deliberately intended to cause harm. The Court therefore finds that the "subjective test" is met and Defendant acted with the subjective intent to cause harm.

The same rationale applies to the determination that Defendant acted with an objective substantial certainty of harm. If the glass was thrown by Defendant, the injuries at issue could only have been sustained by a forceful throw directed at Plaintiff. Throwing a glass at someone with sufficient force to cause it to shatter and cause the injuries sustained by Plaintiff is an act "which from a reasonable person's standpoint [is] substantially certain to result in harm" and is sufficient for the Court to "infer that the debtor's subjective intent was to inflict a willful and malicious injury on the plaintiff." *In re Powers*, 421 B.R. at 335. Alternatively, in the event that Defendant struck Plaintiff with the glass in his hand, it is clear that such an act has a substantial objective certainty of causing harm, and that the court may therefore "infer that the debtor's subjective intent was to inflict a willful and malicious injury on the plaintiff." *Id.*

7

## CONCLUSION

The Court finds that Defendant willfully and maliciously injured Plaintiff and that any debts arising from that injury are nondischargeable under Section 523(a)(6) of the Bankruptcy Code.

IT IS, THEREFORE, ORDERED that the relief requested in Plaintiff's Complaint and 11 U.S.C. § 523(a)(6) Exception to Discharge is hereby GRANTED. A judgment will be entered contemporaneously with this Memorandum Opinion.

# # #